## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOANNA ELENA KNIGHT,      :
Individually and as the         :
Personal Representative of the  :
ESTATE OF CHARLES JUNIOR :    Case No.
KNIGHT, III, Deceased,       :
                               :
and                            :
                               :
ALLISON MICHELE GRAY    :
CLARKE,                   :
Individually, and as the Personal :
Representative of the ESTATE OF :
MATTHEW DAVID CLARKE,    :
Deceased,               :
                               :
Plaintiffs,              :
                               :
v.                             :
                               :
AVCO CORPORATION,      :
                               :
Defendant.            :

## CIVIL ACTION COMPLAINT

## (JURY TRIAL DEMANDED)

COMES NOW, Plaintiffs Joanna Elena Knight, individually and as personal representative of the Estate of Charles Junior Knight, III, deceased, and Allison Michele Gray Clarke, individually and as personal representative of the Estate of Matthew David Clarke, deceased, by and through their undersigned counsel, and for their Complaint against Defendant, Avco Corporation, plead as follows:

## THE PARTIES AND JURISDICTIONAL ALLEGATIONS COMMON TO ALL COUNTS

1.      Plaintiff Joanna Elena Knight ("Ms. Knight") is an individual and a resident of the state of Maryland with an address of 1602 Upton Scott Way, Crownsville, MD 21302.   On June 13, 2019, the Register of Wills for Anne Arundel County, MD issued Letters of Administration to Ms. Knight to serve as the Administratrix of the Estate of Charles Junior Knight, III, deceased.  At all times material hereto, Ms. Knight and Charles Knight were husband and wife and resided together in the state of Maryland.

2.      Plaintiff Allison Michele Gray Clarke ("Ms. Clarke") is an individual and a resident of the state of Maryland with an address of 104 Dalesway Drive, Pasadena, Maryland, 21122. On June 18, 2019, Ms. Clarke was appointed Letters of Administration to serve as the personal representative of the Estate of Matthew David Clarke, deceased.  At all times material hereto, Ms. Clarke and Matthew David Clarke were husband and wife and resided together in the state of Maryland.

3.      As pled in more detail below, Decedents, Charles Junior Knight, III and Matthew David Clarke, were killed as a result of a May 4, 2019 crash of a Guimbal Cabri G2 helicopter which was powered by an engine designed, manufactured, sold, and/or supported by Defendant Avco Corporation.

2

4.      Defendant Avco Corporation is a business entity organized and existing under the laws of the State of Delaware.  Avco Corporation claims a principal place of business at 40 Westminster Street, Providence, Rhode Island.  Avco Corporation is registered with the Pennsylvania Secretary of State to do business in the Commonwealth of Pennsylvania.

5.      Subject matter jurisdiction exists over this action pursuant to 28 U.S.C. § 1332(a) as there is complete diversity among the parties and the matter in controversy exceeds $75,000 exclusive of costs and interest.

6.      Specific personal jurisdiction over Defendant Avco Corporation is authorized by the Pennsylvania Long Arm Statute 42 Pa.C.S.A. § 5322 because Avco Corporation transacted business within the Commonwealth by a series of acts and/or a single act for the purpose of realizing pecuniary benefit including, but not limited to, shipping merchandise directly or indirectly through this Commonwealth, engaging in business within this Commonwealth, owning and using property within this Commonwealth, contracting to supply services within this Commonwealth, and by causing harm or tortious injury by an act or omission in this Commonwealth by:

a.      designing, manufacturing, selling, supporting, certifying, and/or promoting the subject helicopter engine, a model O-360-J2A engine, from its factory and business presence in the Commonwealth of Pennsylvania;

b.      shipping, distributing, selling, and/or delivering the subject O-360-J2A

engine from and/or through the Commonwealth of Pennsylvania;

c.      contracting with the helicopter's manufacturer and seller for purposes

of purchasing and procuring the subject O-360-J2A engine for incorporation

into the helicopter involved in the accident giving rise to this litigation from

its factory and business presence in the Commonwealth of Pennsylvania;

d.      issuing instructions for continuing airworthiness, maintenance,

overhaul, and/or inspection for the subject O-360-J2A engine from its factory

and business presence in the Commonwealth of Pennsylvania;

e.      Being required to accept service of process within the Commonwealth

of Pennsylvania; and

f.      Committing the tortious conduct, by acts or omission, as pled herein,

within the Commonwealth of Pennsylvania from its factory and business

presence in this Commonwealth.

7.      In addition, Defendant maintains the necessary minimum contacts with

the Commonwealth of Pennsylvania to justify the exercise of personal jurisdiction

to the fullest extent of the Due Process Clause of the Constitution of the United

States.  Furthermore, exercise of personal jurisdiction over Defendant will not offend

notions of fair play and substantial justice.

8.     General personal jurisdiction over Avco Corporation also exists. Over the years, Avco Corporation has claimed a principal place of business in many states including, but not limited to Massachusetts, Rhode Island, and Texas.  However, Avco Corporation's principal place of business for its engine manufacturing operating division is located in Pennsylvania and has been located there since 1929. Avco Corporation's physical presence has been in Pennsylvania since then and exceptional circumstances exist to deem Avco Corporation at home in Pennsylvania.

a.     Avco Corporation conducts all activities for design, testing, certification, manufacturing, sales, product support, repair station work, and overhaul work for its aircraft piston engine business in Pennsylvania;

b.     Avco Corporation's safety review board and materials review board are in Pennsylvania;

c.     all documentation concerning the aircraft piston business, engine records, warranty records, and engineering reports are maintained at the Avco Corporation facility in Pennsylvania; and

d.     all dealings, communications, and interactions with regulatory authorities is done by Avco Corporation from its Pennsylvania location.

9.     Venue is appropriate in the Middle District of Pennsylvania because the product at issue was designed, manufactured, sold, and supported by Avco

Corporation from its factory facility located within the Middle District of Pennsylvania.

## **THE ACCIDENT**

10.     The Guimbal Cabri G2 helicopter is a two-seat light helicopter powered by an O-360-J2A engine, designed, manufactured, sold, certified, supported, and/or assembled by Avco Corporation.

11.     The O-360-J2A engine is a four-cylinder piston powered carbureted engine.  The fuel air mixture necessary for combustion enters the engine cylinders through intake valves and the exhaust is expelled from the cylinder chamber through exhaust valves.

12.     Proper and safe operation of the O-360-J2A engine requires the intake and exhaust valves to open and close as necessary.  The intake and exhaust valves are installed through guides which serve as the passage within which the valves move.  The valve guides must be manufactured with, and thereafter must maintain, an appropriate clearance to prevent excessive combustion byproduct and oil accumulation build up.  Such accumulations will cause a valve to stick.

13.     Proper and safe operation of the O-360-J2A engine also requires the valve train system of the engine to safely and properly cause the opening and closing of the intake and exhaust valves.  This is accomplished by rotation of the engine's camshaft, geared and synchronized to the engine crankshaft, which is equipped with

oblong lobes that push on rods called push rods as the camshaft rotates. The push rods open and close spring-loaded rocker arms which open and close the valves. In addition, a rotation cap causes the valves to rotate to prevent deposit accumulation. Improper wear, manufacture, design, spalling, machining, or operation of this system will cause a valve to stick.

14.    An in-flight stuck exhaust valve in the subject engine and helicopter configuration will result in an engine failure causing the helicopter to depart controlled flight and crash.

15.    On May 4, 2019, Plaintiffs' decedents were occupants of a Guimbal Cabri G2 helicopter bearing registration number N572MD.

16.    Decedent Charles Junior Knight, III, was the pilot in command of the helicopter and was fully qualified and licensed to operate the helicopter.

17.    Decedent Matthew David Clarke was a passenger in the helicopter.

18.    While in flight over the Chesapeake Bay the helicopter's O-360-J2A engine experienced a catastrophic engine malfunction caused by the sticking of the number one cylinder exhaust valve.

19.    As explained in further detail below, the sticking of the exhaust valve occurred for the reasons stated in paragraph 12 and/or 13 which constitute malfunctions due to manufacturing and/or design defects in the O-360-J2A engine.

20.     The stuck exhaust valve in the number one cylinder caused a reduction of engine power significant enough to prevent safe flight and caused the helicopter to depart controlled flight and impact into the Chesapeake Bay causing the deaths of Charles Junior Knight, III, and Matthew David Clarke.

## THE DAMAGES CLAIMED

21.     The Plaintiffs bring this action under Pennsylvania's Wrongful Death Act and Survival Act.  In the event another state's law is deemed to apply to the issue of recoverable damages, Plaintiffs assert all remedies available under that state's wrongful death and survival acts.

22.     Charles Junior Knight, III is survived by his wife, Joanna Elena Knight, and their natural minor children A.J.K and A.N.K. In addition, Charles Junior Knight, III is survived by his mother Linda Kay Walters.

23.     Matthew David Clarke is survived by his wife Allison Michele Gray Clarke and their natural minor children C.M.C., T.D.C., and M.G.C. In addition, Matthew David Clarke is survived by his parents Stephen Leroy Clarke and Barbara Jo Clarke.

24.     As a direct and proximate result of the accident both decedents experienced conscious pain and suffering, personal injury, pre-death terror and fear of impending death, all of which resulted in their ultimate deaths. Claims for these damages survive decedents' deaths.

25.    As a direct and proximate result of the accident, both decedents' estates suffered loss of future earnings, net accumulations, pecuniary losses, funeral and burial expenses, estate administration expenses, and any other damage allowed under applicable law. Claims for these damages survive decedents' deaths.

26.    As a direct and proximate result of the accident, Joanna Knight, A.J.K, A.N.K., and Linda Kay Walters have suffered the loss of Charles Junior Knight, III's care, comfort, companionship, protection, guidance, tutelage, support, services, contributions, earnings, society, advice, moral upbringing, and parental and spousal services. In addition, Joanna Knight, A.J.K, A.N.K., and Linda Kay Walters have suffered emotional pain and anguish and claim all damages recoverable under the applicable wrongful death act.

27.    As a direct and proximate result of the accident, Allison Michele Gray Clarke, C.M.C., T.D.C. M.G.C., Stephen Leroy Clarke and Barbara Jo Clarke have suffered the loss of Matthew David Clarke's care, comfort, companionship, protection, guidance, tutelage, support, services, contributions, earnings, society, advice, moral upbringing, and parental and spousal services. In addition, Allison Michele Gray Clarke, C.M.C., T.D.C. M.G.C., Stephen Leroy Clarke and Barbara Jo Clarke have suffered emotional pain and anguish and claim all damages recoverable under the applicable wrongful death act.

## COUNT I
### (Strict Liability)
### <u>Plaintiffs v. Avco Corporation</u>

28.     Plaintiffs incorporate paragraphs 1 through 27 above as if set forth at length in this count.

29.     Defendant Avco Corporation is in the business of designing, manufacturing, selling, certifying, inspecting, testing, distributing, supplying, servicing, supporting, and marketing aircraft and helicopter engines including the subject O-360-J2A engine and its component parts.

30.     As part of its business operations, Avco Corporation designed manufactured, sold, certified, inspected, tested, distributed, supplied, serviced, supported, and/or marketed the subject O-360-J2A valve train system which is a mechanical system that controls the operation of the intake and exhaust valves.  The components of this system include the exhaust valves, intake valves, valve guides, rocker arm, rotation caps, pushrod, lifters, and camshaft. In this role, Avco Corporation issued design specifications, material specifications, operating specifications, and imposed other engineering requirements on the components of the valve train system and/or delegated those duties to suppliers over whom Avco Corporation exercised direct control.

31.     Further to its status as the manufacturer, seller, designer, certifier, and/or product supporter, Avco Corporation issued maintenance instructions,

inspection instructions, troubleshooting instructions, and/or was also required to issue all appropriate warnings necessary to make the O-360-J2A engine assembly safe for use in a helicopter.

32.     The subject O-360-J2A engine installed on the accident helicopter included components, including but not limited to the number one exhaust valve, valve guide, push rod, lifters, camshaft and/or other components of the drive train were defectively designed at the time they left the control of Avco Corporation.

33.     The subject O-360-J2A engine installed on the accident helicopter included components, including but not limited to the number one exhaust valve, valve guide, push rod, lifters, camshaft and/or other components of the drive train were defectively manufactured at the time they left the control of Avco Corporation.

34.     The defects in the subject O-360-J2A engine include, but are not limited to the following:

       a.     defective design and/or manufacture of the exhaust valves, exhaust valve guides, valve rotators, and/or other components of the valve train system resulting in stuck valve condition;

       b.     improper design, manufacture, dimensions, tolerances, specifications, and/or clearances of the exhaust valves, valve guides, camshaft and lobes, valve rotators and/or other components of the valve train system resulting in stuck valve condition;

c.    improper material selection of the exhaust valves, valve guides, valve rotators, camshaft lobes, and/or other components of the valve train system resulting in stuck valve condition;

d.    designing and/or manufacturing the exhaust valve, valve guide, valve rotators, camshaft and lobes, and/or other components of the valve train in a manner that increases the temperature of the exhaust valves in operation and induces excessive oil oxidation and combustion byproducts to accumulate on the valve stem and guide interior resulting in stuck valve condition;

e.    designing and/or manufacturing the valve train system in such a manner causing the exhaust valve to fail to properly seat inducing excessively high valve temperatures and increasing the accumulation of oil oxidation and combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

f.    using improper sodium cooled exhaust valves which by design increase valve temperature and result in excessive accumulation of oil oxidation and combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

g.    improperly designing and/or manufacturing valve guides in a manner that permits them to protrude beyond the boss and extrude into the exhaust port thereby increasing the likelihood of combustion byproducts to

12

accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

h.    defective design and/or manufacture of the valve guide to improper dimension, tolerance, specifications, and/or clearance thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

i.    defective design and/or manufacture of the exhaust valve to improper dimension, tolerance, specifications, and/or clearance thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

j.    utilizing an improper and defectively designed carburetor, carburetor float system, and/or fuel delivery system which was prone to causing overly rich fuel/air mixture to be delivered to the cylinder combustion chamber resulting in combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

k.    using a camshaft of improper design, manufacture, clearance, dimensions, machining, material selection, and/or specifications rendering it susceptible to spalling and/or premature wear, thereby inducing exhaust valve failure;

l.    designing and/or manufacturing the O-360-J2A engine in such a manner that causes each of the foregoing conditions to manifest in between inspection and/or overhaul periods; and

m.    failing to issue all warnings, maintenance instructions, inspection instructions, and/or troubleshooting instructions which are necessary to make the O-360-J2A engine, the valve train system, the exhaust valve, valve guides, camshaft, and fuel delivery system safe.

35.    The foregoing defects rendered the O-360-J2A engine and its component parts dangerously defective beyond a reasonable consumer's expectation.

36.    The danger of an in-flight stuck valve in an O-360-J2A engine installed in a helicopter was beyond the expectations and acceptance of any reasonable consumer.

37.    There was no way for Plaintiffs' decedents to anticipate or appreciate the dangerous condition of the products or the attendant risk of danger associated therewith.

38.    Plaintiffs' decedents were a pilot and passenger and ordinary consumers of the Defendant's product, and the Defendant's non-disclosure of information concerning the risks and dangers associated with the product fostered

Plaintiffs' decedents' reasonable belief that the products were appropriate for the use to which they were advertised, intended, and permitted.

39.    The probability of harm to a pilot and passenger associated with a stuck exhaust valve, including but not limited to, personal injury, death, death by drowning, death by mutilation, and/or death by other horrible means, greatly outweighed the benefits of the product and the burden or cost of taken precautions or utilizing safer alternatively designed products that would have prevented this accident.

40.    Feasible alternative designs existed at the time of the design inception, manufacture, and sale of the product which if used, would have prevented the accident.

41.    Plaintiffs' decedents used the Defendant's product as it was intended to be used and were given no warnings or disclosures by Defendant of the defects identified above and the risks associated therewith.

42.    As a direct and proximate result of the design defects, manufacturing defects, and/or Defendant's failure to warn as identified above, the subject O-360-J2A engine experienced a catastrophic in-flight stuck exhaust valve which caused the subject helicopter carrying Plaintiffs' decedents to depart controlled flight and impact the waters of the Chesapeake Bay thereby causing serious pre-death injuries

to Plaintiffs' decedents, the ultimate deaths of Plaintiffs' decedents, and the damages to Plaintiffs' decedents' estates, beneficiaries, and dependents.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages, delay damages, interest, and any other damage allowable under the law or otherwise deemed appropriate by the Court.

## COUNT II
### (Negligence)
### Plaintiffs v. Avco Corporation

43.     Plaintiffs incorporate paragraphs 1 through 42 above as if set forth at length in this count.

44.     Avco Corporation is a seller, manufacturer, designer, distributor, assembler, and product supporter of the O-360-J2A engine assembly and its component parts and as such, owed duties to Plaintiffs and their decedents to act in an appropriate and reasonable manner so as to prevent the sale and dissemination of a dangerous and defective product, and/or otherwise warn of such conditions.

45.     In addition to those legal duties imposed by the common law, Avco Corporation is the holder of the type certificate for the O-360-J2A engine which imposes duties under federal regulatory law to design and manufacture an aviation engine in a manner that did not render the helicopter unairworthy or otherwise cause the engine and/or helicopter to fall below the applicable airworthiness standards, and/or otherwise warn of such conditions.

46.    Avco Corporation breached its duties and was negligent, grossly negligent, careless, and reckless as follows:

a.    defectively designing and/or manufacturing the exhaust valves, exhaust valve guides, valve rotators, camshaft, and/or other components of the valve train system resulting in stuck valve condition;

b.    using improper design, manufacture, dimensions, tolerances, specifications, and/or clearances of the exhaust valves, valve guides, valve rotators and other components of the valve train system resulting in stuck valve condition;

c.    using improper material selection of the exhaust valves, valve guides, valve rotators, camshaft, and/or other components of the valve train system resulting in stuck valve condition;

d.    designing and/or manufacturing the exhaust valve, valve guide, valve rotators, and/or other components of the valve train in a manner that increases the temperature of the exhaust valves in operation and induces excessive oil oxidation and combustion byproducts to accumulate on the valve stem and guide interior resulting in stuck valve condition;

e.    designing and/or manufacturing the valve train system in such a manner causing the exhaust valve to fail to properly seat inducing excessively high valve temperatures and increasing the accumulation of oil oxidation and

combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

      f.     using improper sodium cooled exhaust valves which by design increase valve temperature and result in excessive accumulation of oil oxidation and combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

      g.     improperly designing and/or manufacturing valve guides in a manner that permits them to protrude beyond the boss and extrude into the exhaust port thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

      h.     defectively designing and/or manufacturing the valve guide to improper dimension, tolerance, specifications, and/or clearance thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

      i.     defectively designing and/or manufacturing the exhaust valve to improper dimension, tolerance, specifications, and/or clearance thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

j.    utilizing an improper and defectively designed carburetor, carburetor float system, and/or fuel delivery system which was prone to causing overly rich fuel/air mixture to be delivered to the cylinder combustion chamber resulting in combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

k.    using a camshaft of improper clearance, dimensions, material selection, machining, and/or specifications rendering it susceptible to spalling and/or premature wear thereby inducing exhaust valve failure;

l.    designing the O-360-J2A engine in such a manner that causes each of the foregoing conditions to manifest in between inspection and/or overhaul periods;

m.    failing to issue all warnings, maintenance instructions, inspection instructions, and/or troubleshooting instructions which are necessary to make the O-360-J2A engine, the valve train system, the exhaust valve, valve guides, camshaft, and/or fuel delivery system safe; and

n.    failing to redesign, correct known defects, report known defects, or otherwise warn of known defects in the subject O-360-J2A engine and/or its component parts.

47.    As a direct result of the foregoing acts and omissions of Avco Corporation, the subject O-360-J2A engine experienced a catastrophic in-flight

19

stuck exhaust valve which caused the subject helicopter carrying Plaintiffs' decedents to depart controlled flight and impact the waters of the Chesapeake Bay thereby causing serious pre-death injuries to Plaintiffs' decedents, the ultimate deaths of Plaintiffs' decedents, and the damages to Plaintiffs' decedents' estates, beneficiaries, and dependents.

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages, delay damages, interest, and any other damage allowable under the law or otherwise deemed appropriate by the Court.

### COUNT III
### (Breach of Express and Implied Warranties)
### Plaintiffs v. Avco Corporation

48.    Plaintiffs incorporate paragraphs 1 through 47 above as if set forth at length in this count.

49.    At all times material hereto, Avco Corporation was a merchant engaged in the business of designing, manufacturing, selling, supplying, supporting, certifying, distributing, licensing, distributing, and/or assembling aviation piston driven engines, their component parts, as well as the associated product support materials and instructions for continued airworthiness.

50.    Avco Corporation described and advertised goods for sale, including the O-360-J2A engine and component parts. Such descriptions and advertisements included, but not limited to, advertising brochures, internet website presence,

instruction manuals, user manuals, overhauls manuals and/or product support materials.

51.    These descriptions, representations, and affirmations concerning the products resulted in express warranties that the products were airworthy, safe for their intended use, and conformed to approved and/or mandated engineering data.

52.    These descriptions, representations, and/or affirmations resulted in oral and written express and implied warranties concerning the products addressed in this Complaint.

53.    Avco Corporation expressly and impliedly warranted that the accident O-360-J2A engine and associated components were designed and manufactured properly and would therefore operate safely.

54.    As a result of the sales activities of Avco Corporation, it expressly and impliedly warranted that the products were merchantable, airworthy, fit for their intended purpose, fit for their particular purpose, suitable for use in the accident helicopter, conformed to design data, and/or would operate safely in between inspection periods when properly maintained and used.

55.    These warranties, descriptions, representations, and affirmations became part of the bases of the bargain of the sale of the product and these warranties ran to Plaintiffs and their decedents as direct, indirect, intended, and/or third-party beneficiaries.

56.    Plaintiffs and their decedents relied upon Avco Corporation's descriptions, representations, and affirmations and Plaintiffs' decedents would not have operated the accident helicopter with the O-360-J2A engine had they known of any danger.

57.    By selling defective products, Avco Corporation breached the express and implied warranties described above.  Said breaches include the following:

a.    defective design and/or manufacture of the exhaust valves, exhaust valve guides, valve rotators, and/or other components of the valve train system resulting in stuck valve condition;

b.    improper design, manufacture, dimensions, tolerances, specifications, and/or clearances of the exhaust valves, valve guides, camshaft and lobes, valve rotators and/or other components of the valve train system resulting in stuck valve condition;

c.    improper material selection of the exhaust valves, valve guides, valve rotators, camshaft lobes, and other components of the valve train system resulting in stuck valve condition;

d.    designing and/or manufacturing the exhaust valve, valve guide, valve rotators, camshaft and lobes, and/or other components of the valve train in a manner that increases the temperature of the exhaust valves in operation

and induces excessive oil oxidation and combustion byproducts to accumulate on the valve stem and guide interior resulting in stuck valve condition;

e.    designing and/or manufacturing the valve train system in such a manner causing the exhaust valve to fail to properly seat, inducing excessively high valve temperatures, and increasing the accumulation of oil oxidation and combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

f.    using improper sodium cooled exhaust valves which by design increase valve temperature and result in excessive accumulation of oil oxidation and combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in a stuck valve condition;

g.    improperly designing and/or manufacturing valve guides in a manner that permits them to protrude beyond the boss and extrude into the exhaust port thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

h.    defective design and/or manufacture of the valve guide to improper dimension, tolerance, specifications, and/or clearance thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

i.      defective design and/or manufacture of the exhaust valve to improper dimension, tolerance, specifications, and/or clearance thereby increasing the likelihood of combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

j.      utilizing an improper and defectively designed carburetor, carburetor float system, and/or fuel delivery system which was prone to causing overly rich fuel/air mixture to be delivered to the cylinder combustion chamber resulting in combustion byproducts to accumulate on the valve stem and interior of the valve guide resulting in stuck valve condition;

k.      using a camshaft of improper design, manufacture, clearance, dimensions, machining, material selection, and/or specifications rendering it susceptible to spalling and/or premature wear, thereby inducing exhaust valve failure;

l.      designing and/or manufacturing the O-360-J2A engine in such a manner that causes each of the foregoing conditions to manifest in between inspection and/or overhaul periods; and

m.      failing to issue all warnings, maintenance instructions, inspection instructions, and/or troubleshooting instructions which are necessary to make the O-360-J2A engine, the valve train system, the exhaust valve, valve guides, camshaft, and/or fuel delivery system safe.

24

58.    As a direct result of the foregoing breaches of warranties, the subject O-360-J2A engine experienced a catastrophic in-flight stuck exhaust valve which caused the subject helicopter carrying Plaintiffs' decedents to depart controlled flight and impact the waters of the Chesapeake Bay thereby causing serious pre-death injuries to Plaintiffs' decedents, the ultimate deaths of Plaintiffs' decedents, and the damages to Plaintiffs' decedents' estates, beneficiaries, and dependents;

WHEREFORE, Plaintiffs demand judgment against Defendant for compensatory damages, punitive damages, delay damages, interest, and any other damage allowable under the law or otherwise deemed appropriate by the Court.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all of the above counts.

Dated: April 15, 2021                    Respectfully submitted:

/s/ *Bradley J. Stoll*
Bradley J. Stoll
KATZMAN, LAMPERT & STOLL
121 North Wayne Ave., Suite 205
Wayne, PA 19087
bstoll@klm-law.com
Phone: (610) 686-9686
Fax: (610) 686-9687
PA ID: 89635

Counsel for Plaintiff Joanna Elena Knight
Individually, and as Administratrix of
The Estate of Charles Junior Knight, III.

and

/s/ *E. Merritt Lentz*
E. Merritt Lentz
GILMAN & BEDIGIAN, LLC
1515 Market Street, Ste. 1200
Philadelphia, PA 19102
mlentz@gblegalteam.com
Phone: (215) 561-4999
Fax: (215) 434-1313
PA ID: 90240

Counsel for Plaintiff Allison Michele Gray
Clarke, Individually, and as Administratrix of
The Estate of Matthew David Clarke.