**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOANNA ELENA KNIGHT, *Individually and as Personal Representative of the Estate of Charles Junior Knight II, Deceased,* and ALLISON MICHELE GRAY CLARKE, *Individually and as Personal Representative of the Estate of Matthew Clarke, Deceased*, | No. 4:21-CV-00702 <br><br> (Chief Judge Brann) |
| Plaintiffs, | |
| v. | |
| AVCO CORPORATION, | |
| Defendant. | |

**MEMORANDUM OPINION**

**SEPTEMBER 18, 2025**

This matter arises from a helicopter crash in the Chesapeake Bay on May 4, 2019, which resulted in the deaths of both men onboard: Charles Junior Knight II and Matthew Clarke. Messrs. Knight and Clarke were domiciliaries of the State of Maryland and their fateful flight occurred entirely within that state. But the helicopter was powered by an engine that was designed and manufactured across the Mason-Dixon Line, in the Commonwealth of Pennsylvania. With trial approaching, the Pennsylvanian defendant, Avco, asks the Court to apply Maryland's law on certain issues, and the Marylanders argue for Pennsylvania's. I conclude that both

jurisdictions' laws will apply depending on the issue. The motion is therefore granted in part and denied in part.

## I.    BACKGROUND[1]

### A.    Factual Background

On May 4, 2019, decedents Charles Junior Knight II and Matthew Clarke were killed when a helicopter Mr. Knight was operating suddenly dove into the Chesapeake Bay. Both men were Maryland residents and their surviving spouses (the plaintiffs in this case) are too. The flight took off from Fort Meade, Maryland, the flight plan was confined to Maryland, and the crash occurred in Maryland, near Kent Island. Avco's theory of the case is that Mr. Knight was negligent when operating the helicopter and lost spatial awareness due to waves of dense fog that were present on the day of the crash.

The plaintiffs blame Avco for designing and manufacturing a faulty engine. The engine, an O-360-J2A, was designed and manufactured in Williamsport, Pennsylvania by Lycoming Engines, an unincorporated operating division of Avco, which is incorporated in Delaware and "currently headquartered in Texas."[2] The engine's operating limitations were also certified in Pennsylvania.[3] In 2017, Avco

---

[1]    The Court summarily recites the facts with a focus on the points that are relevant to the instant motion. Because I write primarily for the parties, I draw most of the facts from my prior opinion regarding expert admissibility and summary judgment, Doc. 127 (Mem. Op.), and do not include pin-citation to that opinion. The truth of these facts is undisputed; the parties disagree only about their relevance.

[2]    Doc. 150 (Brief in Supp.) at 5; Doc. 150-3 (Def.'s Ex. B) at 3; *see* Doc. 1 (Compl.) ¶ 4.

[3]    Doc. 155-1 (Pls.' Ex. 2) at 3.

sold the subject engine to Hélicoptères Guimbal, a French company, which installed it on the accident helicopter, a Guimbal Cabri G2.[4] Guimbal sold the helicopter to Precision, LLC, an Oregon-based distributor, which sold it on to JSC Investment Group LLC (d/b/a Monumental Helicopters), a Maryland LLC.[5] Monumental used the helicopter for training and rental flights conducted out of Tipton Airport, Maryland.[6] According to the plaintiffs' theory, Avco defectively designed and/or manufactured the engine such that "coking" occurs at the exhaust valve stem and guide interface, which in this instance prevented the exhaust valve from closing, resulting in a loss of compression, engine power, and, ultimately, flight.

### B.    Procedural Background

The plaintiffs brought this suit against Avco to recover damages for their husbands' deaths. They assert three claims: strict liability for defective design and/or manufacturing;[7] negligence for defective design and/or manufacturing;[8] and breach of express and implied warranties for the sale of a defective product.[9] On each claim they request all available damages, including compensatory and punitive damages.[10]

---

[4]    Doc. 150-4 (Def.'s Ex. C) at 3.
[5]    Doc. 150 at 5-6; Doc. 150-5 (Def.'s Ex. D) at 3.
[6]    Doc. 150-6 (Def.'s Ex. E) at 22:22-23:12, 28:24-29:2, 43:7-17.
[7]    Doc. 1 ¶¶ 28-42.
[8]    *Id.* ¶¶ 43-47.
[9]    *Id.* ¶¶ 48-58.
[10]    *Id.* ¶¶ 42, 47, 58.

On August 9, 2024, I ruled on the parties' cross-motions to exclude each other's expert witnesses and denied Avco's motion for summary judgment.[11] Since then, this case has moved toward trial, which is scheduled to commence on January 5, 2026.[12] In preparation for trial, Avco submitted the instant motion for the application of Maryland law, which the plaintiffs have opposed.[13] The motion is now ripe for disposition.[14]

## II.    LEGAL STANDARD

In determining which state's law applies in a given case, a federal court applies the conflicts-of-law rules of the state in which it sits.[15] Under Pennsylvania law, the conflicts analysis is a three-step process.[16] First, the Court reviews the applicable laws of the competing states and determines whether there is any difference between them.[17] In other words, the Court should determine whether there is an "actual or real conflict" between the laws, as opposed to "no conflict at all."[18] If there is no conflict, the law of the forum state applies.[19] Second, if there is an actual conflict, the Court must "determine whether a *true* conflict exists between the

---

[11]    Doc. 127.

[12]    Doc. 146 (Sch. Order).

[13]    Doc. 149 (Mot.); Doc. 153 (Opp'n).

[14]    Also pending are a number of motions in limine, which the Court will resolve separately.

[15]    *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

[16]    *See Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 192-94 (E.D. Pa. 2015).

[17]    *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007).

[18]    *Id.* at 230 (emphasis omitted).

[19]    *Broederdorf*, 129 F. Supp. 3d at 193 (citing *State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 185 (3d Cir. 2006)).

*application* of" the laws of the competing jurisdictions.[20] This inquiry should focus on the "'interest[s] . . .' of the policies of all interested states."[21] "There is a true conflict 'when the governmental interests of *both* jurisdictions would be impaired if their law were not applied.'"[22] But "if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law,'"[23] or "where the laws of the two jurisdictions would produce the same *result* on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question" by applying the law of the interested jurisdiction.[24] Finally, if there is a true conflict between the potentially applicable laws, "the Court must then determine which state has the 'greater interest in the application of its law.'"[25]

In determining which state's interest is greater in a tort case, Pennsylvania courts rely on the factors set forth in the Restatement (Second) of Conflict of Laws § 145(2),[26] which include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence,

---

[20] *Berg*, 435 F.3d at 462 (citing *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997)) (emphasis added).

[21] *Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (quoting *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 169-70 (3d Cir. 2005)).

[22] *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n.15 (3d Cir. 1991)) (emphasis in original).

[23] *Id.* (quoting *Lacey*, 932 F.2d at 187).

[24] *Berg*, 435 F.3d at 462 (citing *Williams*, 109 F.3d at 893) (emphasis added); *Garcia*, 421 F.3d at 220. There may also be an "unprovided-for conflict" when no jurisdiction has an interest in the application of its law—in such a case, the *lex loci delicti* rule is applied. *See Budget Rent-A-Car*, 407 F.3d at 170.

[25] *Hammersmith*, 480 F.3d at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 586 (Pa 1970)).

[26] *Broederdorf*, 129 F. Supp. 3d at 193-94 (citing *Budget Rent-A-Car*, 407 F.3d at 170).

nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."[27] The factors at section 6 of the Restatement are also relevant, and include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."[28] Weighing the relevant factors is a qualitative, not quantitative exercise.[29]

In a case where multiple conflict-of-law issues are presented, like this one, it is important to keep in mind that the "analysis is issue-specific . . . [so] different states' laws may apply to different issues in a single case, a principle known as '*depecage*.'"[30] "Although no Pennsylvania court has explicitly addressed the doctrine of *depecage*, the Third Circuit has predicted that the courts of Pennsylvania would apply it in appropriate cases."[31]

---

[27] Restatement (Second) Conflict of Laws § 145(2)
[28] *Id.* § 6.
[29] *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996).
[30] *Berg*, 435 F.3d at 462 (citing *Compagnie des Bauxites v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 691 (3d Cir. 1989)).
[31] *Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 492 (E.D. Pa. 2010) (citing *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 91 (3d Cir. 2008)); *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 637 (E.D. Pa. 2008).

## III.   DISCUSSION

The parties dispute the law to apply to three issues. First, Avco contends that Maryland's contributory negligence rule should apply on the question of liability.[32] Second, Avco argues that Maryland's compensatory damages cap should apply.[33] And third, Avco asserts that Maryland's standard of proof should control with regard to punitive damages.[34] Plaintiffs dispute each of these points and contend that Pennsylvania law should apply in every instance.[35]

Before turning to those issues, I reject the Plaintiffs' reliance on Md. Code Ann., Cts. & Jud. Proc. § 3–903(a), which they cite continuously throughout their brief in opposition.[36] Section 3-903(a) is a choice of law provision which states that "[i]f the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland court shall apply the substantive law of that jurisdiction."[37] Plaintiffs contend that this provision indicates that Maryland has no interest in the application of its law in any wrongful death case where the wrongful act occurred outside of Maryland.

In truth, however, Plaintiffs' position is essentially an entreaty for this Court to apply *renvoi*—"[t]he concept of looking to the whole law of another state

---

[32] Doc. 150 at 9-11.
[33] *Id.* at 11-13.
[34] *Id.* at 13-15.
[35] *See* Doc. 153.
[36] *See generally id.*
[37] Md. Code Ann., Cts. & Jud. Proc. § 3–903(a).

including its choice of law rule."[38] But *renvoi* "has had little application . . . beyond determining interests in land and in determining the validity of a decree of divorce."[39] Plaintiffs do not explain why *renvoi* should apply here (indeed no one seems to have noticed that plaintiffs are arguing for *renvoi*), in the wrongful death context, and the Maryland provision seems to explicitly reject such an interpretation because "[b]y its plain terms . . . this provision governs only the application of choice of law principles in Maryland courts."[40] Without a compelling argument overcoming the plain terms of the statute and the narrow utility of *renvoi*, the Court opts out of that game "of legal badminton,"[41] and its potential for an "infinite loop" of reference and counter-reference.[42] Instead, I ignore Maryland's internal choice of law provisions as irrelevant to a conflict-of-law analysis under Pennsylvania law.

---

[38] *Tyminski v. United States*, 481 F.2d 257, 267 (3d Cir. 1973); *In re Harding's Estate*, 12 Pa. D. & C. 633, 636 (Pa. Orphans' Ct. Phila. Cnty. 1929) ("Perhaps I may say that *Renvoi* is substantially this: Where the court or the forum in one country finds it necessary for the decision of the case under its system of private international law to determine it according to the law of another state, and it is found, on investigation, that the law of that state would, under its system of private international law, determine the question according to the law of the forum, there is a *Renvoi*; that is, a sending back or reference to the law of the forum.").

[39] *Tyminski*, 481 F.2d at 267 (citing N. Reese & M. Rosenberg, Conflict of Laws Cases and Materials 505 (1971)).

[40] *Smith v. Hope Village*, 481 F. Supp. 2d 172, 207 n.29 (D.D.C. 2007).

[41] *Donegal Mut. Ins. Co. v. Transamerica Ins. Co.*, 62 Pa. D. & C. 2d 374, 380 (Pa. Ct. C.P. Allegheny Cnty. 1973).

[42] *Smith*, 481 F. Supp. 2d at 207 n.29; *see Colonial Park for Mobile Homes, Inc. v. New Britain Twp.*, 408 A.2d 1160, 1166 (Pa. Commw. Ct. 1979) (Craig, J., dissenting) (describing *renvoi* as a "trap"); *Harding's Estate*, 12 Pa. D. & C. at 636 ("The complications that may ensue in the circumstances of particular cases are endless.").

A.    **Contributory Negligence**

At step one, there is an actual conflict between Pennsylvania and Maryland law on the issue of the effect of a plaintiff's negligence. Pennsylvania uses a modified comparative negligence approach, permitting the plaintiff to recover damages proportionate to the defendant's negligence so long as she was not more than 50% negligent.[43] Maryland, on the other hand, continues to employ the doctrine of contributory negligence, barring the plaintiff from recovering any damages if he was at all negligent.[44] These contrasting schemes are in actual conflict with each other.

Here, the conflict is a true one. Pennsylvania's interest in its comparative negligence law is primarily focused on "protecting its citizens against tortious conduct."[45] The Pennsylvania approach embodies the "legislative judgments" that a plaintiff should not be entirely cut off from recovery merely because he is "partially responsible for his injuries" if "others['] . . . negligence contributed to the event," that "any recovery should be reduced in proportion to the plaintiff's share of responsibility for his injuries," and that recovery *should* be denied "when the plaintiff is more responsible than the defendant(s) for his injuries."[46] Secondarily,

---

[43] 42 Pa. Cons. Stat. § 7102; *Marks v. Redner's Warehouse Mkts.*, 136 A.3d 984, 988-89 (Pa. Super. Ct. 2016) (citing *Terwilliger v. Kitchen*, 781 A.2d 1201, 1209 (Pa. Super. Ct. 2001)).

[44] *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1152, 1155, 1158 (Md. 2013).

[45] *Marks*, 136 A.3d at 989 (citing *Laconis v. Burlington Cnty. Bridge Comm'n*, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990)).

[46] *Howell v. Clyde*, 620 A.2d 1107, 1114 (Pa. 1993) (Nix, C.J., dissenting).

Pennsylvania's comparative negligence law has a deterrent effect on improper conduct within its borders by ensuring that a tortfeasor cannot entirely escape liability based on minimal negligence by the injured party.[47] Pennsylvania's regime is designed to protect its plaintiff-citizens and punish its resident tortfeasors.[48]

In contrast, Maryland's contributory negligence law is intended to avoid "juries . . . award[ing] to plaintiffs sums that had the potential to stifle 'newly developing industry' [or] 'courts . . . assist[ing] a wrongdoer who suffered an injury as a result of his own wrongdoing.'"[49] In the context of Virginia's continued use of contributory negligence, the United States Court of Appeals for the Third Circuit has explained that "[t]his common law policy protects defendants from claims and encourages persons to exercise care for their own safety. By limiting recovery the common law policy should tend to hold down insurance costs."[50] In sum, Maryland's policy serves the dual purposes of protecting its citizen-defendants from excessive

---

[47] *Lewis v. Lycoming*, 73 F. Supp. 3d 539, 543 (E.D. Pa. 2014) ("[E]ven when damages are not labeled as punitive, 'the financial protection a state has prescribed, being a part of its provision for the general security, is in part a sanction for wrongfully causing harm.'" (quoting *Broome v. Antlers' Hunting Club*, 595 F.2d 921, 925 (3d Cir. 1979))); *Sikkelee v. Precision Airmotive Corp.*, No. 07-CV-0886, 2012 WL 12862562, at *4 (M.D. Pa. Mar. 13, 2012) (reasoning that there is a true conflict between Pennsylvania and North Carolina comparative/contributory negligence rules in case involving South Carolinian plaintiffs because barring recovery entirely would undermine Pennsylvania's interest in holding its negligent manufacturers accountable); *Marks*, 136 A.3d at 989 (similarly noting that Pennsylvania has an "interest in providing redress for wrongs committed *by* or against its citizens") (emphasis added).

[48] *Shuder v. McDonald's Corp.*, 859 F.2d 266, 271 (3d Cir. 1988) ("Pennsylvania has adopted comparative negligence and thus follows a plaintiff-protecting policy.").

[49] *Coleman*, 69 A.3d at 1153 (quoting *Harrison v. Montgomery Cnty. Bd. of Educ.*, 456 A.2d 894, 898 (Md. 1983)); *see Harrison*, 456 A.2d at 897-98 (discussing purposes of rule).

[50] *Shuder*, 859 F.2d at 271.

damages verdicts that would hurt its economy and imposing upon those who act in Maryland a strict duty of care.

Each state's interest would be inhibited by application of the other's law.[51] Pennsylvania's desire to hold its resident tortfeasors liable even when the plaintiff is somewhat negligent might be negated by application of Maryland's rule defeating liability based on 1% negligence by the plaintiffs. In contrast, Maryland's goal of imposing a heightened standard of care on potential plaintiffs acting in its jurisdiction would be undermined by employing Pennsylvania law to permit these Marylander plaintiffs to recover even in the face of the decedents' own negligence. Because the interests clash, there is a true conflict, and I must weigh the states' contacts qualitatively to determine which has the stronger interest in the application of its law.[52]

On the facts of this case, Maryland's interest in the application of its law is heavier than that of Pennsylvania. The contacts in this case are largely cross-cutting but weigh slightly in favor of Maryland. The injury occurred in that state. The "conduct causing the injury" occurred either in Pennsylvania, Maryland, or both, depending on the theory of the case, and thus does not weigh strongly in either direction.[53] The home of the parties is similarly neutral: Avco operates in

---

[51] *See Sikkelee*, 2012 WL 12862562, at *4 (finding true conflict); *Marks*, 136 A.3d at 988-89 (same).

[52] *LeJeune*, 85 F.3d at 1071.

[53] Restatement (Second) Conflict of Laws § 145(2)(b).

Pennsylvania but seeks Maryland's law; plaintiffs are from Maryland and desire Pennsylvania's law.[54] And the relationship between the parties is extremely attenuated given that the decedents merely rented a helicopter assembled by a French company which bought Avco's motor, but to the extent there is one it is centered in Maryland.[55]

Considering these contacts qualitatively alongside the interest-focused section 6 factors confirms that Maryland law should apply. In this case involving a Pennsylvanian defendant and Marylander plaintiffs, Maryland's interests would be furthered more significantly by the application of its law. "The relative liberality to plaintiffs of Pennsylvania law" is primarily focused on ensuring that the Commonwealth's own citizens can recover for their injuries.[56] Pennsylvania has no interest in ensuring full recovery for other states' residents, particularly for injuries they sustain at home.[57] Maryland, on the other hand, has adhered to a legal rule designed in part to "encourage[] persons to exercise care for their own safety."[58]

---

[54]  *Id.* § 145(2)(c).

[55]  *Id.* § 145(2)(d).

[56]  *See Shuder*, 859 F.2d at 270 ("Delaware [and not Pennsylvania] law should be applied [to Delawarean plaintiff injured in Delaware by Pennsylvanian defendant] as Delaware residents should not be accorded rights not given them by their home state simply because a visitor from another state is involved in an accident in Delaware." (citing *Miller v. Gay*, 470 A.2d 1353, 1356 (Pa. Super. Ct. 1983))).

[57]  *Lewis*, 73 F. Supp. 3d at 543 ("Pennsylvania has an interest in promoting recovery by providing a full measure of damages at least for its citizens. As Avco notes, this interest is of little importance in this case in which all of the decedents and plaintiffs are or were British citizens and residents of the United Kingdom.").

[58]  *Shuder*, 859 F.2d at 272 (discussing Virginia's contributory negligence rule).

That policy would be advanced by applying Maryland's rule to Maryland residents acting in Maryland.[59] Similarly, it would not upset the Plaintiffs' expectations for Maryland's contributory negligence law to apply, and doing so advances both predictability and uniformity by requiring potential plaintiffs in Maryland to use due care, rather than allowing them to avoid their own state's strict regime according to the random luck of the defendant's domicile.[60] Finally, although Pennsylvania's interest in holding its tortfeasor residents liable may be somewhat inhibited here, the existence of other claims in this case which are unaffected by the contributory negligence rule lessens the weight of that consideration.[61] This conclusion comports with the Restatement's specific guidance that contributory fault conflicts should normally be resolved in favor of "the local law of the state in which the injury occurred."[62]

The primary case on which the plaintiffs rely is distinguishable. In *Sikkelee v. Precision Airmotive Corporation*, Judge John E. Jones III, writing for this Court, held that Pennsylvania's comparative negligence law would apply to an airplane crash in North Carolina.[63] But that case involved a South Carolinian plaintiff who

---

[59] The defendant-protective motivations behind Maryland's contributory negligence rule will not be served by application of its rule because Avco is not a Marylander.

[60] *See* Restatement (Second) Conflict of Laws §§ 6(d), (f).

[61] *See* Doc. 153 (noting that "Maryland's contributory negligence will have no effect on Plaintiffs' product liability claims" (citing *Ellsworth v. Sherne Lingerie, Inc.*, 495 A.2d 348, 357 (Md. 1985))).

[62] Restatement (Second) Conflict of Laws § 164(2).

[63] 2012 WL 12862562, at *7.

was only in North Carolina for the purpose of the flight in question.[64] Judge Jones stressed the defendant-protective aspects of North Carolina's contributory negligence rule and determined that North Carolina had little interest in advancing these considerations as to a Pennsylvanian defendant.[65] Moreover, Judge Jones reasoned that North Carolina's intermediate appellate courts had questioned the continued viability of contributory negligence, which in his view lessened the state's interest in applying its law.[66] As noted, Maryland's connection to these facts is stronger than North Carolina's in *Sikkelee*, and Maryland has remained far more steadfast in its adherence to contributory negligence.

Although the Plaintiffs attempt to color as critical Maryland courts' view of contributory negligence, those same decisions have repeatedly refused to abandon the rule, and have emphasized that the legislature's decision to keep it indicates continued adherence to its purposes.[67] The Court finds that Maryland's courts have clearly determined that contributory negligence remains the policy of that state based on the legislature's sound judgment; broader critiques of the doctrine in general

---

[64] *Id.* at *1.

[65] *Id.* at *7 ("We noted *supra* that North Carolina's goals of encouraging its industry by rejecting strict products liability and protecting its courts from stale claims by enacting a statute of repose are not implicated in a case involving a Pennsylvania manufacturer and Pennsylvania courts.").

[66] *Id.*

[67] *See Coleman*, 69 A.3d at 1158; *Harrison*, 456 A.2d at 903. Plaintiffs' reliance on the discussion in *Bennett v. Gentile*, 321 A.3d 34, 44 (Md. 2024), is especially unconvincing because the Maryland Supreme Court in that case used its prior adherence to contributory negligence *as support* for continuing to adhere to a strict privity rule for certain legal malpractice claims.

cannot overcome these specific and considered reaffirmances of its application in Maryland.

Accordingly, Maryland's contributory negligence rule will apply to the liability issues in this case.

## B.    Compensatory Damages Cap

There is also an actual conflict between the states' laws regarding the maximum award for compensatory damages. Pennsylvania law includes no limit on the damages that can be recovered by a plaintiff in a wrongful death case—indeed, the Pennsylvania Constitution prohibits such a cap.[68] Maryland, in contrast, imposes a strict statutory cap on compensatory non-economic damages.[69] Neither party disputes that the jurisdictions' laws differ in significant ways and therefore actually conflict.

In this instance, however, an analysis of the interests reveals the conflict to be a false one. Pennsylvania's decision not to apply a damages cap has a twofold purpose. First, Pennsylvania has taken a plaintiff-friendly position based on the "principle of full compensation."[70] Second, Pennsylvania's law indicates that it "has

---

[68]    Pa. Const. of 1968, art. III, § 18 (1915).

[69]    Md. Code Ann., Cts. & Jud. Proc. §§ 11-108(b)(2)-(3).

[70]    *In re Air Crash Disaster at Mannheim, Ger.: on Sept. 11, 1982*, 575 F. Supp. 521, 526 (E.D. Pa. 1983); *Lewis*, 73 F. Supp. 3d at 543 ("Pennsylvania has an interest in promoting recovery by providing a full measure of damages at least for its citizens." (citing *Arcila v. Christopher Trucking*, 195 F. Supp. 2d 690, 694 (E.D. Pa. 2002))); *see Clawans v. United States*, 75 F. Supp. 2d 368, 373 (D.N.J. 1999) (in conflict between New Jersey uncapped damages and Maryland law, reasoning that New Jersey's interest was "in insuring full and fair compensation

a strong public policy interest in holding Pennsylvania manufacturers accountable for injuries that occur as a result of their defective products."[71] Pennsylvania is interested in compensating its domiciliaries and punishing its domestic wrongdoers.

Maryland's cap is motivated by its legislature's goal of "assur[ing] the availability of sufficient liability insurance, at a reasonable cost, in order to cover claims for personal injuries to members of the public."[72] Limiting damage awards "may lead to greater ease in calculating premiums, thus making the market more attractive to insurers, and ultimately may lead to reduced premiums, making insurance more affordable for individuals and organizations performing needed services."[73] Thus, Maryland's interest is in protecting corporate defendants in order to foster its economy.

---

for its injured domiciliaries in tort actions, such as the three New Jersey plaintiffs who have brought suit here.").

[71] *Flynn v. Omega Flex, Inc.*, No. 20-CV-3082, 2021 WL 4477079, at *3 (E.D. Pa. Sept. 29, 2021) (citing *In re Mannheim*, 575 F. Supp. at 514-25); *see Lewis*, 73 F. Supp. 3d at 543 ("[T]he Commonwealth has a 'corollary interest in deterring tortious conduct within its borders.' 'In private tort law, . . . the deterrence function is accomplished by compensation of the plaintiff.'" (quoting *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 167 (3d Cir. 1980) *overruled on other grounds by* 454 U.S. 235 (1981))).

[72] *Murphy v. Edmonds*, 601 A.2d 102, 115 (Md. 1992); *Oaks v. Connors*, 660 A.2d 423, 428 (Md. 1995); *Franklin v. Mazda Motor Corp.*, 704 F. Supp. 1325, 1327-28 (D. Md. 1989) ("These [legislative action] groups were formed in response to what the Maryland Governor and legislature perceived to be a crisis in the availability of insurance in Maryland."); *see Studer v. Avis Rent a Car Sys., LLC*, No. 23-CV-3828, 2025 WL 950384, at *3 (E.D. Pa. Mar. 28, 2025) (analyzing conflict between Pennsylvania and Virginia law and reasoning that "[t]hrough its statutory cap on damages, Virginia has an interest in protecting parties who operate businesses in its jurisdiction from excessive verdicts."); *Arcila*, 195 F. Supp. 2d at 694 (analyzing New Jersey damages cap and explaining that "New Jersey's law governing damages has been described, by 'the majority of the cases,' as embodying the 'Legislature's interest in the protection of defendants from large recoveries.'" (internal citations omitted)).

[73] *Murphy*, 601 A.2d at 115.

16

On the present facts, these interests do not conflict. Maryland's insurance market is entirely unaffected by the application of Pennsylvania damages law to a non-Marylander defendant.[74] Maryland's desire to protect its defendants is not inhibited "when its citizens are more generously compensated under the applicable law of another jurisdiction where no [Maryland] citizen or company doing business in [Maryland] is a defendant."[75] Pennsylvania, on the other hand, is strongly interested in "promoting the quality and safety of what is manufactured here, [and has chosen to do] so . . . through laws that adversely affect one's pocketbook if quality and safety are lacking."[76] Put simply, the business interests that undergird Maryland's damages cap are not inhibited by compensating its citizens *more* generously under a *different jurisdiction's* law,[77] while limiting a Pennsylvania manufacturer's damages under a different jurisdiction's law would directly undermine Pennsylvania's interest in imposing full liability on its domiciliary tortfeasors.

---

[74] *See Carter v. Nat'l R.R. Passenger Corp.*, 413 F. Supp. 2d 495, 500 (E.D. Pa. 2005) ("Nor does Maryland have any interest in limiting Amtrak's liability to protect the state's business climate. Amtrak is an out-of-state corporation whose main tracks traverse the state between Delaware and the District of Columbia.").

[75] *Lewis*, 73 F. Supp. at 543; *see Arcila*, 195 F. Supp. at 694 ("Applying New Jersey law in this case would undoubtedly limit defendants' exposure to damages. This outcome, however, cannot be said to promote New Jersey's policy of protecting defendants from large damages recoveries because none of the defendants are New Jersey citizens and none of the allegedly negligent conduct occurred in New Jersey.").

[76] *Lewis*, 73 F. Supp. at 543.

[77] *Id.*

The primary case on which defendant relies, *Murray v. Janssen Pharmaceuticals, Inc.*,[78] is distinguishable. There, in a dispute between Maryland and Pennsylvania compensatory damages law, the Pennsylvania Superior Court applied Maryland law, but did so in part because the Plaintiff had waived any argument regarding Pennsylvania's interest in the application of its law.[79] With that waiver in mind, the Superior Court reasoned that neither Maryland nor Pennsylvania had a relevant interest on the issue.[80] Ultimately, Maryland law applied because that state had the *only* connection to the litigation; the defendants were New Jersey domiciliaries, while Murray was a Marylander.[81] Notwithstanding the fact that one of the three defendants was incorporated in Pennsylvania,[82] the trial and Superior Court reasoned that Pennsylvania was only involved because it was "merely the forum state where [Mr. Murray] chose to sue."[83] The development of the arguments in *Murray* and the residential structure of the Defendants undermine the case's applicability here.[84]

---

[78]  180 A.3d 1235 (Pa. Super. Ct. 2018).

[79]  *Id.* at 1255 n.14.

[80]  *Id.* at 1254-55 (finding an "unprovided-for conflict").

[81]  *Id.* at 1238, 1250 n.9.

[82]  *Id.* at 1250 n.9.

[83]  *Id.* at 1256 (quoting trial court opinion).

[84]  The Court also finds *Knipe*, 583 F. Supp. 2d at 613-16, distinguishable because the cited analysis focused on liability, not the extent of damages. So too with *Flynn*. 2021 WL 4477079, at *4-5.

Furthermore, the Court is reticent to extend conflict of laws decisions in cases involving pharmaceutical companies beyond their unique factual circumstances.[85] Those cases consistently highlight the fact that the plaintiffs were prescribed the drugs at issue by healthcare providers located in their states, which occurred as a result of the defendants' marketing efforts targeting those jurisdictions.[86] Developing and marketing pharmaceuticals involves a significantly different scope of business and implicates distinct incentives, risks, and rules that do not apply to the development and marketing of the helicopter engine at issue in this case. In the Court's view, the pharmaceutical cases should often be limited to their own context.

Because only Pennsylvania has an interest in applying its law to this issue on the facts of the case, Pennsylvania's compensatory damages rules will apply.

### C.    Punitive Damages

There is an actual conflict between the evidentiary standards to be applied when determining the appropriateness of punitive damages in Pennsylvania and Maryland.[87] In Pennsylvania, a jury may award punitive damages if it finds "by a

---

[85]    *See, e.g.*, *Murray*, 180 A.3d 1235; *Knipe*, 583 F. Supp. 2d 602.

[86]    *Knipe*, 583 F. Supp. 2d at 614-15 (citing pharmaceutical conflict of laws cases); *Wolfe*, 703 F. Supp. 2d at 493-94 ("Maine, on the other hand, is the place where, allegedly, the injury initially occurred, the place where defendant sold and plaintiff purchased the Children's Motrin that caused plaintiff's injury, the place where defendants representations caused plaintiff's doctor to recommend Children's Motrin, the place where its representations caused plaintiff to follow her doctor's recommendation, and the place where plaintiff lived at the time of her injury.").

[87]    Plaintiffs briefly argue that there is no conflict between the Pennsylvania and Maryland punitive damages standards in product liability cases, Doc. 153 at 3-4, but even if the states use the same test, their evidentiary standards differ, as I explain. Moreover, if Plaintiffs are correct then the law of the forum, Pennsylvania, would apply. *Broederdorf*, 129 F. Supp. 3d at

preponderance of the evidence" that the defendant's conduct was outrageous, meaning done "with a bad motive or . . . with reckless indifference to the interest of others."[88] In Maryland, "the standard for an award of punitive damages is 'clear and convincing evidence,'" and "a jury may award punitive damages only when a plaintiff has established 'actual malice' on the part of the defendant . . . [meaning] 'a sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud.'"[89] These standards conflict most clearly in the standard of proof—preponderance vs. clear and convincing evidence—and apparently also as to whether reckless conduct will support a punitive damages award.

On the facts of the case, this conflict is again false. As the Maryland Court of Appeals explained in *Owens-Illinois, Inc. v. Zenobia*, "[t]he purposes of punitive damages relate entirely to the nature of the defendant's conduct."[90] Pennsylvania courts agree that "punitive damages are penal in nature" and are intended "to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar

---

193 (citing *Holmes Prods.*, 165 F. App'x at 185). That is the same result that I reach after analyzing the jurisdictions' interests.

[88] *Sprague v. Walter*, 656 A.2d 890, 923 (Pa. Super. Ct. 1995) (internal citations omitted); *see Piazza v. Young*, 403 F. Supp. 3d 421, 443 (M.D. Pa. 2019) ("Under Pennsylvania law, an award of punitive damages is proper where only where a defendant's conduct is 'outrageous,' 'malicious, wanton, reckless, willful, or oppressive.'" (quoting *Feld v. Merriam*, 485 A.2d 742, 747-48 (Pa. 1984)); *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 354 (E.D. Pa. 2022) (quoting *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 360 (3d Cir. 2015)).

[89] *Spengler v. Sears, Roebuck & Co.*, 878 A.2d 628, 644 (Md. Ct. Spec. App. 2005) (quoting *Darcars Motors of Silver Springs, Inc. v. Borzym*, 841 A.2d 828, 837 (Md. 2004)).

[90] 601 A.2d 633, 649 (Md. 1992) (quoting *Schaefer v. Miller*, 587 A.2d 491, 503 (Md. 1991)). The Maryland Court of Appeals has since been renamed the Maryland Supreme Court. I name the court based on what it was called at the time of the relevant decision.

conduct."[91] Despite having the same interests in mind, "Maryland's decision to adopt a heightened standard reflects a policy of restricting punitive damages awards in order to protect companies that conduct business in the state from excessive financial liability."[92] In similar cases, courts have reasoned that limiting punitive damages serves to "promote (1) the financial stability of the businesses that conduct their affairs within its borders, and (2) the overall economic well-being of its citizenry."[93]

Here, both states' interests in punishing a defendant who acts outrageously are adequately served by the application of Pennsylvania law. Maryland's thirst for retribution and deterrence is sated as effectively by Pennsylvania's willingness to punish for less culpable conduct than Maryland courts would. But Pennsylvania's interest in punishment may be inhibited by applying Maryland's heightened standard of proof and potentially cutting off liability in some cases where it would lie under Pennsylvania law.[94] And Maryland's interest in its heightened evidentiary standard—protecting its businesses from excessive liability and thus financial instability—is not relevant to a Pennsylvanian defendant.[95] Thus, only

---

[91] *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (internal citation omitted).

[92] *Beverly v. Vitran Exp., Inc.*, No. 12-CV-1599, 2012 WL 3772579, at *3 (D. Md. 2012).

[93] *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 468 (E.D. Pa. 1996) (quoting *In re Disaster at Detroit Metro. Airport on Aug. 16, 1987*, 750 F. Supp. 793, 805 (E.D. Mich. 1989)).

[94] *Lewis*, 73 F. Supp. 3d at 544 ("Pennsylvania's interest in affecting the conduct of its manufacturers would be impaired by the application of England's more restrictive damages law.").

[95] *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 723-24 (E.D. Pa. 2014) (finding a false conflict because "[although] Florida has a governmental interest in applying its laws to protect entities within its borders from excessive punitive damages awards, [] Florida has no material interest in protecting McNeil—a New Jersey defendant doing business in Pennsylvania. In

Pennsylvania's interests in punishing its resident tortfeasor businesses would be inhibited, and Pennsylvania law should apply.

Even if the conflict were a true one, Pennsylvania's interests on this issue outweigh Maryland's. As the Restatement explains, "[i]f the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship."[96] Thus, courts have broadly reasoned that "when punitive damages are the subject of a conflict of laws, the domicile or residents of the plaintiff and the place where the injury occurred are not relevant contacts. . . . Instead, the most critical contacts include the place where the alleged punitive conduct occurred and, if dealing with a corporate defendant, the state of incorporation and its principal place of business."[97]

Considering this guidance, the relevant factors point strongly toward the application of Pennsylvania law. Avco's allegedly outrageous conduct occurred at the Williamsport facility, and despite Avco's protestations that it is not a

---

contrast, Pennsylvania has an interest in applying its stricter punitive damages laws to deter the allegedly wrongful conduct of companies like McNeil doing business in the Commonwealth."); *Lewis*, 73 F. Supp. 3d at 543 ("The interest of England in protecting defendants that do business within its borders through its damages law is nonexistent where, as here, a Pennsylvania corporation manufactured an engine in Pennsylvania for an aircraft built in New York by an American company.")

[96] Restatement (Second) Conflict of Laws § 145 cmt. c.

[97] *Kelly*, 933 F. Supp. at 69 (internal citations omitted); *Campbell v. Fawber*, 975 F. Supp. 2d 485, 506-08 (M.D. Pa. 2013) (applying law of the state in which the allegedly defective product was designed for punitive damages in a defective design suit).

Pennsylvania corporation, the Williamsport facility has operated so consistently and makes up such a substantial part of Avco's operations that several courts have determined that the company is at home in this Commonwealth.[98] Moreover, there is no evidence to suggest that the relationship between Avco and the decedents was anything but fortuitous.[99] Considering the balance of the states' interests as described above, Pennsylvania law applies based on the contacts relevant to this issue.

## IV.    CONCLUSION

For the above-stated reasons, Pennsylvania law applies on the damages issues while Maryland law applies on the issue of contributory negligence.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[98]    *See Lewis*, 73 F. Supp. 3d at 543 (describing Avco as "a Pennsylvania corporation"); *Sikkelee*, 2012 WL 12862562, at *1 n.1 (noting that, although Avco is incorporated and headquartered outside of Pennsylvania, "[a]t least two other courts have held, in unrelated engine fuel system product liability cases, that AVCO's principal place of business is in Pennsylvania because '[o]ther than the ownership of subsidiaries, the only business that AVCO conducts is the Lycoming business in Williamsport.'" (internal citations omitted)); *cf.* Doc. 150 at 10 n.2 (conceding that "Lycoming Engines . . . manufactures engines in Pennsylvania.").

[99]    It is notable that Avco argues for Maryland law, yet submits no evidence that it directly conducts any business in Maryland. Avco sold the accident engine to a French company and played no part in that engine's arrival in Maryland.